(C. D. 691)

JOHN C. SLEATER CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 16, 1942)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: These are suits brought by plaintiff against the United States for the refund of certain duty alleged to have been improperly levied by the collector of customs at the port of New York on an importation of bedspreads by reason of the wrongful classification of the merchandise. The merchandise in question was classified and assessed for duty under paragraph 911 (a) of the Tariff Act of 1930, as cotton jacquard-figured bedspreads, at the rate of 40 per centum ad valorem. It is claimed to be not jacquard figured, and therefore dutiable at only 25 per centum under the same paragraph.

The merchandise in question consists of cotton bedspreads imported by John C. Sleater Co., Inc., of New York, from Le Tissage L'Abeille, S. A., of Deerlijk, Belgium. According to the specifications of the cotton bedspreads appearing on the printed form attached to the invoices, the bedspreads are dobby-woven. The invoices bear the usual seller's or shipper's declaration sworn to before the United States consul at Antwerp, Belgium.

At the trial plaintiff called as a witness Arthur H. Dick, who testified that he is connected with the Louisville Textiles, Inc., as president and treasurer; that they are engaged in handling cotton yarn and weaving novelty cotton fabrics; that he attended the Lowell Textile Institute, at Lowell, Mass.; that he became associated with Louisville Textiles as production manager in 1930, and became head of the company in 1936; that it was part of his job to analyze the designs of cloth; that these analyses included merchandise like exhibit 1 in the case at bar; that he has written articles for a monthly trade magazine called "Cotton." He stated that he examined a sample of exhibit 1; that so far as the weave is concerned the swatch is identical with exhibit 1. He claimed that the fabric in exhibit 1 was woven on a dobby loom, and that a dobby loom is not a jacquard loom. The witness testified further that basing his answer on his experience and his examination of exhibit 1, he would say it was made with 14 harnesses, exclusive of what might have been required for selvages.

On cross-examination the witness stated that essentially there is nothing about employing 14 harnesses that would exclude an article from being made on a jacquard loom; that 26 harnesses are about the most that can be used on a dobby loom, and that if more were required a jacquard loom would have to be used; that he can deter-

mine the number of harnesses used in the manufacture of a piece of material by analyzing the weave; that visual examination determines the number of harnesses used, but that it is always safest and best to plot a graph; that the pattern of plaintiff's exhibit 1 is a diamond in form, or geometric in character, and is not very elaborate; that a jacquard pattern is more elaborate, has a larger repeat, and possibly runs into floral effects. He admitted that exhibit 1 could be made on a jacquard loom, but that it would be uneconomical and impractical; that it was not conceivable that anyone would produce it on a jacquard loom because only a small number of harnesses are used to weave such a simple pattern. The witness testified further that he felt certain that exhibit 1 was made on a dobby loom because it is characteristic of the dobby weave, but that there is otherwise nothing essentially distinguishable in the construction or weaving of two bedspreads like exhibit 1, one made on the dobby loom and the other on a jacquard loom.

At the close of plaintiff's case, counsel for the defendant moved to have exhibit 1 sent to the Government analyst for the purpose of determining the number of harnesses used, and whether it was made on a dobby or jacquard loom, which motion was granted. Subsequently the report of such analysis was received in evidence as exhibit 2, and reads as follows:

We are unable to state from examination of the merchandise whether it was woven on a Dobby or Jacquard loom.

It could have been woven on a dobby loom with 21 harnesses if the M. D. Deboutteville system (U. S. Patents 1,826,654 and 1,910,595) was employed, otherwise a jacquard must have been used.

Inasmuch as the Government analyst reports that he is unable to state from an examination of the merchandise whether it was woven on a dobby or jacquard loom, which is the only evidence on the part of the Government, we think that it deprives the collector's classification of the merchandise herein of the presumption of correctness which ordinarily attaches thereto under customs law. And, as the Government did not see fit to put in any further evidence, we think it can reasonably be assumed that it did not have any more definite testimony on the question of weave than as shown by the report of its analyst or by the testimony of plaintiff's witness, so that the collector's classification would therefore seem to be without any real basis of fact. The question then for determination is whether the testimony of plaintiff's one witness, taken in conjunction with the invoice description of the merchandise as dobby-woven, is sufficient to make out a *prima facie* case for the plaintiff.

While the testimony of plaintiff's witness shows that the imported bedspreads could be made on a jacquard loom as well as on a dobby loom, and that there would be nothing essentially distinguishable in

their construction of weave if made either way, the said witness testified nevertheless, based on his many years experience in the production and analyses of cotton cloth, that he was able to state with certainty that the bedspreads were woven on a dobby loom, on account of the number of harnesses used and the pattern of said exhibit 1, which is small and of geometric character, and would be uneconomical and impractical to make on a jacquard loom, which is used for more elaborate designs, such as floral effects, and which have larger repeats.

It is of course fundamental that invoice descriptions of imported merchandise are not in themselves controlling in the classification and assessment of duty thereon, but are subject to explanation, challenge, or contradiction by either the collector or the importer. On the other hand it is also true, however, that under certain circumstances invoice descriptions or declarations are given evidentiary value in the absence of other or better evidence. This is well illustrated by the case of *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400. There certain jacquard-figured cotton cloth in the piece had been classified by the collector of customs as "Jacquard figured manufactures of cotton," and assessed for duty as such under paragraph 258 of the act of 1913, at 30 per centum ad valorem. The importers claimed the merchandise more properly dutiable as cotton cloth at the appropriate rate, according to condition and the average number of the yarns, etc., under the provisions of paragraphs 253 and 252 of said tariff act.

It appears that it was not possible to ascertain the average yarn number of all the cloth on the invoice by analysis, for the reason that samples were not available for such purpose as to all the items. This court (then the Board of General Appraisers) nevertheless sustained the claim of the importers as to those fabrics the yarn count of which was invoiced but not determinable by analysis. The Government appealed from such decision, and contended that the invoice required by law was no evidence whatever of the nature or character of the goods, or of any other fact determinative of the classification of imported merchandise or of the rate or amount of duty which should be imposed thereon.

The appellate court however affirmed the decision of this court, and in so doing stated among other things:

True, the statements of the invoice do not finally conclude the collector, but to say that such a document, hedged about as it is by sanctions and safeguards to secure correctness, has no evidentiary value whatever in the absence of better evidence as to the tariff status and dutiable value of merchandise, is to say that Congress did a useless thing and required a document to supply information to the collector for official purposes which was not even weak prima facie evidence of that which it stated. Not only is the invoice prima facie evidence of that which it declares, but unimpeached and not mistrusted or discredited, it is *the*

evidence which determines the collector's action as to all imported merchandise which has not been examined. * * *

\* \* \* \* \* \* \*

That the invoice is controlling in the absence of evidence to the contrary was held by General Appraiser Somerville in T. D. 16647; G. A. 3292, and again in T. D. 24780; G. A. 5472. The decision last named was affirmed by the circuit court in United States v. Lahey & Duncan (132 Fed., 181).

In the present instance the testimony of the plaintiff's one witness, standing alone, is of course not absolute, as, while it shows that the imported bedspreads were probably woven on a dobby loom, it also recognizes the fact that they could have been woven on a jacquard loom. The testimony does however have a strong tendency to corroborate the invoice declaration that the merchandise was dobby-woven, if such declaration may be given any evidentiary value on the issue herein.

As already stated, we do not consider there is any longer any presumption existing in favor of the collector's classification herein, for the reasons before mentioned. This would then seem to leave the invoice declaration the only evidence before us on the question involved. And as such invoice declaration stands before us unimpeached and undiscredited, and is not contradicted by any other or better evidence, we think it can properly be regarded as having evidentiary value under the decisions cited, supra.

In our opinion, therefore, the invoice description of the bedspreads as dobby-woven, taken in conjunction with the corroborating testimony of plaintiff's one witness, fairly well establishes the plaintiff's claim, at least prima facie.

Judgment will be rendered accordingly.