SEARS, ROEBUCK & CO. ET AL. *v*. UNITED STATES (No. 4421)[1]

---
[1] C. A. D. 246.

United States Court of Customs and Patent Appeals, June 10, 1943

*James W. Bevans* for appellants.

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks,* special attorneys, of counsel), for the United States.

[Oral argument April 8, 1943, by Mr. Bevans and Mr. Auster]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, in reappraisements Nos. 118692–A, 119113–A, 120200–A, 121565–A, 121566–A, 122260–A, 125037–A, 125038–A, 125249–A, 125250–A, 125276–A, 125277–A, and 125700–A.

Reappraisements Nos. 118692–A and 119113–A are so-called "test cases,", in which the appraiser appraised the merchandise at values higher than the entered and invoice values. The other eleven reappraisements involve so-called "duress entries."

The merchandise involved consists of ungalvanized standard plow steel wire ropes, in various sizes, exported from Germany at different times from November 1935 to August 1937.

In reappraisement No. 118692–A, one of the test cases, the merchandise was entered at the port of Memphis, Tenn. In the other

test case, reappraisement No. 119113–A, the merchandise was entered at the port of New Orleans, La. In the so-called "duress entries," some of the merchandise was entered at the port of Philadelphia, Pa., and the other at the port of Boston, Mass.

In the test cases, the merchandise was entered in American currency per 100 feet in accordance with the invoice and contract prices, which were the prices paid by the importer. It was appraised in reichsmarks per 100 kilos, less 10 per centum discount, less nondutiable charges, plus the reels on which the rope was wound, apparently in accordance with a German export price list, dated July 1, 1934, which was attached as Exhibit A to a report, dated June 26, 1935 (Collective Exhibit 11), of an Acting Treasury Attaché, Paul Hermes.

So far as pertinent to the issues here, Exhibit A purports to be a list of minimum export prices for wire rope composed of crucible steel. As hereinbefore noted, the involved merchandise is composed of standard plow steel, which is a different kind and quality of steel from that covered by Exhibit A.

It is conceded that the merchandise here in question has no foreign values, and that the proper dutiable values are its export values.

On the trial before the trial judge, the importers, appellants, introduced in evidence the testimony of Emil H. Rennhack, buyer of imports for the hardware department of the appellant company, certain contracts (Exhibits 2 to 6, inclusive) between appellants and the manufacturer of the merchandise in Germany for the purchase of the imported merchandise, an affidavit of Carl Nieberg (Collective Exhibit 8), director of the German manufacturer and exporter of the involved merchandise, and certain consular invoices and entries of Montgomery Ward & Co. (Collective Exhibit 1), covering importations from Germany of standard plow steel wire rope, some of which is the same size as some of that here involved and some of which was exported during substantially the same period as some of the involved merchandise.

The merchandise covered by the Montgomery Ward & Co. invoices was manufactured and exported by a manufacturer other than the manufacturer and exporter of the involved merchandise, and the prices listed on those invoices were different from the prices specified on the invoices involved in the instant case. The merchandise covered by those invoices was apparently appraised by the local appraisers in accordance with the German export price list—Exhibit A, hereinbefore referred to. (It may be stated at this point that counsel for appellants contend that the difference in the prices quoted in Collective Exhibit 1 and those paid by appellants was largely due to the difference in the prices of the reels on which the rope was wound.)

At the time the invoices and entries of Montgomery Ward & Co. were introduced in evidence, they were involved in an appeal for reap-

praisement. Whether that case has been determined or is still pending, is not clear from the record, and we are not advised in that regard by counsel for the parties.

The Government introduced in evidence Collective Exhibits 9, 10, 11 (hereinbefore referred to), 12, 13, 14, and 15, which are reports of Government agents.

Appellants' witness Rennach testified that he had had 20 years' experience in importing wire rope; that the involved standard plow steel rope was manufactured in accordance with standards required by the United States Government; that all rope manufactured for export to the United States must of necessity be of the same quality; that *crucible steel rope* is inferior to, and cheaper than, *standard plow steel rope*, such as that here involved; that the contracts (Exhibits 2 to 6, inclusive) were very favorable to appellants, because appellants were not required to take all of the wire rope specified therein in the event they were able to make a better arrangement; and that his company's purchases were made at prices per 100 feet. The witness further stated that each of the involved contracts (Exhibits 2 to 6, inclusive) covered the purchase of wire rope over a period of several months, and that the rope was purchased for all of appellants' stores in the United States, consisting of ten so-called "mail order or control stores" and approximately five hundred retail stores. The purchases, according to the contracts, ranged from 5,000 feet for 1-inch wire rope. to 130,000 feet for ⅝-inch wire rope.

It is stated, among other things, in the affidavit of Carl Nieberg (Collective Exhibit 8) that the wire rope manufactured for export to the United States is made under United States specifications; that such wire rope is not sold for consumption in Germany; that the cost of manufacturing wire rope for exportation to the United States is less than the cost of manufacturing wire rope sold for consumption in Germany; that the German manufacturer of the merchandise here in question has no agreement which limits its sales in the United States to appellants, but, on the contrary, it "can sell at the same prices to anyone who desires to buy"; that wire rope sold for export to the United States is sold at prices per 100 feet; and that the prices of wire rope sold for consumption in Germany vary considerably. The witness did not state whether or not there was any variation in the prices of wire rope sold for exportation to the United States. Although he stated that his company was free to sell wire rope like that here involved for export to the United States to any purchaser at the same prices as those paid by appellants, he did not state that such wire rope was freely offered for sale to all purchasers for export to the United States at those prices, nor did he state that such wire rope could be purchased by all purchasers from the German manufacturer at those prices.

Upon the record presented, the trial court held that the appraised values of the merchandise were the proper dutiable values. Thereafter, a motion for rehearing was granted, and the trial court reconsidered the evidence of record and held that the dutiable values were the invoice and entered values in the test cases. Judgment was entered accordingly.

On appeal, the appellate division of the customs court held that the invoices of Montgomery Ward & Co. (Collective Exhibit 1) were improperly admitted in evidence, and reversed the trial court's judgment and remanded the cause with instructions to find the proper dutiable values of the merchandise without consideration of those invoices.

On appeal, this court held that the invoices of Montgomery Ward & Co. (Collective Exhibit 1) were properly admitted in evidence and should have been considered by the appellate division of the customs court, the weight to be given such invoices, however, to be determined by that court. Accordingly, the judgment was reversed and the cause remanded with instructions to determine the proper dutiable values of the merchandise on the record made before the trial court. *Sears, Roebuck & Co. et al.* v. *United States*, 30 C. C. P. A. (Customs) 10, C. A. D. 207.

In accordance with our decision and judgment in the case, the appellate division of the customs court reviewed the evidence of record, called attention to the fact that the Government had moved to dismiss the appeals on the ground that the importers had failed to offer competent evidence of the export values of the merchandise, and, among other things, said:

As we find no substantial evidence to support the contention of the appellees [appellants here], we are unable to find an export value for the merchandise different from that returned by the appraiser. The decision of the court below is reversed and the cases are remanded to the trial judge with instructions to dismiss the appeals.

Judgment was entered accordingly.

It is contended here by counsel for appellants that the German export price list (Exhibit A), which was the basis of the local appraisers' appraisements, related to a different quality of steel rope from that here involved; that the local appraisers did not appraise the involved merchandise in the unit of quantity—100 feet—in which such merchandise was usually bought and sold for export to the United States, but, on the contrary, appraised it in a unit quantity of 100 kilos; that, therefore, the appraisements were null and void; that the provision contained in section 501 of the Tariff Act of 1930, which provides that the "value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise," was intended by

the Congress to mean that an importer in an appeal for reappraisement should be required to prove nothing more than that the appraised value of imported merchandise was incorrect; that as appellants established in the instant case that the appraised values were incorrect, the appellate division of the customs court should have accepted the invoice values as being the dutiable values of the merchandise.

Relative to the contention of counsel for appellants that the appraisements of the local appraisers were null and void, it is sufficient to say that, even if it be assumed for the purpose of this decision that the appraisements by the appraisers were erroneous, it does not follow that they were null and void.

In the instant case, all of the elements necessary to valid appraisements were before the appraisers. Accordingly, the appraisements are not null and void. *United States* v. *F. W. Woolworth Co. et al.* 22 C. C. P. A. (Customs) 184, T. D. 47126; *United States* v. *Geo. W. Beermaker*, 23 C. C. P. A. (Customs) 48, T. D. 47714; *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, 62, T. D. 48333.

In support of the contention of counsel for appellants that appellants had established that the appraised values were incorrect and that, therefore, the invoice prices should have been accepted by the appellate division of the customs court as being the export and dutiable values of the merchandise, counsel cite our decisions in the cases of *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400, and *United States* v. *Sabin*, 12 Ct. Cust. Appls. 520, T. D. 40731 and cases therein cited.

In the case of *United States* v. *Bloomingdale Bros. & Co.*, *supra*, this court held, as correctly stated in the headnote, that "Where there was nothing except the invoice to show the yarn count of cotton cloths under paragraph 253 and 252, tariff act of 1913, and the invoice was undiscredited and unimpeached, the Board of United States General Appraisers correctly presumed that the yarn count was shown by the invoice, and their decision sustaining the protest and directing reliquidation in accordance with the yarn count stated in the invoice is affirmed."

In the case of *United States* v. *Sabin*, *supra*, the court held that under the facts there presented the price paid for imported merchandise, as shown by the invoice, was some evidence of market value, citing the cases of *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, 283, T. D. 38217, and *United States* v. *Bloomingdale Bros. & Co.*, *supra*.

In the case of *Lloyd Co.* v. *United States*, *supra*, this court held that the price paid by the importer for certain merchandise, as shown by the invoices, under the facts and circumstances of that case, was competent evidence of the market value and might well have been

accepted by the appraiser, as, in fact, it was, as the market value of the goods in the country of exportation.

The decisions in those cases, however, are not controlling of the issues raised here by counsel for appellants.

In the case of *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, 52, T. D. 48332, this court held that, in the event the presumption of correctness attending the appraiser's appraisement was overcome, the party appealing for reappraisement was required to go further and establish the correct dutiable value of the merchandise in order to prevail. In so holding, the court cited the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276.

In the case of *United States* v. *Manahan Chemical Co., Inc.*, *supra*, this court said:

> Appellant's counsel contend that the prices stated in the invoices constitute substantial evidence as to the dutiable value of the merchandise. It is true that an invoice, under certain circumstances, may be considered in the appraisal of merchandise, but an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise.

> In the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, we said:

> > The court below is quite correct in the statement that as a matter of law a single sale might establish an export value. But, in order to do so, *it must appear from proof* that such a sale accords with a free offering at that price—

> to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *. [Italics supplied.]

> There is nothing in the invoices or other papers constituting a part of the record indicating that the prices named in the invoices were the prices at which the merchandise was offered to all purchasers in the principal markets of Germany, either for home consumption in that country or for export to countries other than the United States. In other words, there is nothing in the record to indicate that the prices named in the invoices accord with a free offering of such or similar merchandise in the principal markets of Germany in the usual wholesale quantities and in the usual course of trade.

As hereinbefore noted, the prices stated in appellants' invoices are in accordance with the prices covered by the contracts (Exhibits 2 to 6, inclusive), and there is nothing in the contracts or in the invoices, nor is there anything in the affidavit of Carl Nieberg (Collective Exhibit 8) or in the testimony of appellants' witness Emil H. Rennhack, to indicate that merchandise like that here involved was freely offered for sale to all purchasers in the principal markets of Germany for export to the United States at the prices set forth in appellants' invoices. Furthermore, there is nothing in the invoices of Montgomery Ward & Co. Collective Exhibit 1) to indicate that the merchandise covered thereby was freely offered for sale to all purchasers in the principal markets of Germany for export to the United States at the prices therein set forth.

No evidence was offered by appellants to explain the facts and circumstances in connection with the invoices of Montgomery Ward & Co. Whether the merchandise covered by those invoices was sold under contracts for unusually large quantities of wire rope, does not appear of record. We are unable to hold, therefore, that the appellate division of the customs court erred in holding that appellants had failed to establish by any substantial evidence export values of the merchandise in question different from the values returned by the local appraisers. Accordingly, the judgment of the appellate division, reversing the judgment of the trial court and remanding the cause with instructions to dismiss the appeals, is *affirmed*.