BEFORE THE SECOND DIVISION, DECEMBER 1, 1948

**No. 52705.**—Pan American Products Corp. *v.* United States, protests 21995–K/ 12016, 46394–K/12254, and 50894–K/12289 (New Orleans).

TILSON, Judge: The three protests listed above were originally submitted and decided, together with protests 44200–K and 42178–K, as one case. (C. D. 880.) In that decision all claims in the two latter protests were overruled, but protests 21995–K, 46394–K, and 50894–K were sustained, holding that "As the Government offered no testimony, and the plaintiffs' testimony is of no value, the only evidence before the court are the invoice descriptions and declarations." Thereafter, and in due course, a motion for rehearing was duly filed and granted as to the protests which had been sustained.

The merchandise in question is invoiced as "sisal rope," varying in diameter from ⅜ to 1⅛ inches. Duty was levied thereon at the rate of either 2 cents per pound, or at 2 cents per pound and 15 percent ad valorem, according to diameter, under the provisions of paragraph 1005 (a)(1), Tariff Act of 1930, which is as follows:

PAR. 1005 (a). Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns:

(1) Wholly or in chief value of manila (abaca), sisal, henequen, or other hard fiber, 2 cents per pound; and in addition thereto, on any of the foregoing smaller than three-fourths of one inch in diameter, 15 per centum ad valorem; \* \* \*

The plaintiff claims said merchandise to be properly dutiable at either 1 cent per pound, or at 1 cent per pound and 7½ percent ad valorem under said paragraph 1005 (a) (1) and the trade agreement with the Netherlands, T. D. 48075, as cordage wholly or in chief value of sisal. Other claims are made which need not be considered here.

Said trade agreement carves out of said paragraph 1005 (a) (1) a provision for:

Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns, wholly or in chief value of *sisal* [Italics ours.]_____1c per lb.

Any of the foregoing smaller than three-fourths of one inch in diameter shall be subject to an additional duty of_____7½% ad val.

Except for the fact that the trade negotiators carved out of paragraph 1005 (a) (1) a provision for merchandise composed of *sisal* and made no provision therein for merchandise composed of *henequen*, the distinction between sisal cordage and henequen cordage would not be important, but it is the contention of the plaintiff that the merchandise here involved consists of sisal cordage and should therefore be dutiable as claimed, while the defendant claims that the merchandise consists of henequen cordage and is therefore dutiable as assessed by the collector.

In our original decision we stated:

Briefly stated, the testimony of all of plaintiffs' witnesses is simply to the effect that the imported merchandise is composed of sisal, or Mexican sisal or henequen; that sisal and henequen were practically the same thing; that they never bought any merchandise similar to the imported under the designation of henequen cordage, and that they never heard of merchandise similar to the imported referred to as henequen in the United States.

The claim of the plaintiffs, according to their brief, seems to be (1) that sisal and henequen are synonymous terms in the trade, and that the merchandise in question was therefore regarded as sisal cordage in the trade; (2) that the merchandise is in fact cordage made of sisal; and (3) that the invoice descriptions and declarations should be taken as sufficiently showing that the merchandise consists of sisal cordage in view of the fact that there are no collector's or appraiser's reports in any of these cases finding it to be henequen, and the Government has offered no evidence of its own.

As to the first point, we may say that even if henequen was also known as sisal or Mexican sisal in the trade, as testified by some of plaintiffs' witnesses, it is significant that Congress has expressly provided for sisal and henequen, and other hard fibers, in paragraph 1684 of the Tariff Act of 1930, as also for binding twine of sisal grass, henequen, etc., in paragraph 1622, as well as for cordage and twines of sisal, henequen, etc., in paragraph 1005 (a) and (b). And we think it is still more significant that in the trade agreement with the Netherlands the lower rate of duty accorded to cordage under paragraph 1005 (a) (1) is limited to cordage "wholly or in chief value of *sisal*," and not also extended to cordage wholly or in chief value of manila, henequen, or other hard fiber, while the reduced rate under paragraph 1005 (b) is made to apply equally to cords and twines wholly or in chief value of "manila (abaca) *sisal, henequen,* or other hard fiber." [Italics ours.]

* * * we think it is definitely shown that both Congress and the negotiators of the trade agreement with the Netherlands used the terms "sisal" and "henequen" in the botanical sense, namely, as referring to the plant or fiber known botanically as "Agave sisalina" and "Agave fourcroydes," respectively, and that in the tariff sense "sisal" and "henequen" were therefore not to be considered as being the same thing.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The next question is whether the record shows that any or all of the imported merchandise is in fact in chief value of sisal, as distinguished from henequen, as claimed by the plaintiffs. On this issue the testimony of plaintiffs' witnesses is

of little or no value as they make no distinction between sisal and henequen cordage. Plaintiffs argue in their brief, however, that as there are no collector's or appraiser's reports, and the record fails to show that the merchandise was actually classified as henequen cordage under said paragraph 1005 (a), there is no presumption of law that it is cordage made of henequen, or that it is not made of sisal, and that therefore the invoice descriptions or declarations should be accepted as controlling, in the absence of any better evidence.

We quite agree with the plaintiffs' contention, if such are the facts, under authority of our recent decision in *John C. Sleater Co., Inc.* v. *United States*, 9 Cust. Ct. 190 (C. D. 691), in which we held that invoice descriptions or declarations were entitled to be given evidentiary value when unimpeached and undiscredited, in the absence of other or better evidence. Citing *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400.

We are in accord with our original decision in this case, quoted above, down to the last paragraph. As to the holding in that paragraph, after more mature consideration, we cannot now agree. Under the facts before us, we now hold that the collector's classification of the merchandise must be held to be as cordage in chief value of henequen. In making his classification the collector is presumed to have given due consideration to both the original provisions of said paragraph 1005 (a) (1), providing for cordage in chief value of hennequen, and to the provisions of the trade agreement providing for cordage in chief value of sisal. In making his classification, it must be presumed that had the collector found the merchandise herein to be composed in chief value of sisal, he would have applied the provisions of the trade agreement and assessed duty thereon at the rate of 1 cent per pound, or at the rate of 1 cent per pound and 7½ percent ad valorem, as provided in said trade agreement. Not having so assessed the merchandise, but, on the contrary, having assessed the merchandise at the rate of 2 cents per pound, or 2 cents per pound and 15 percent ad valorem, it must be presumed that he found the merchandise to be composed in chief value of henequen, or, at least, that he found the merchandise not to be composed in chief value of sisal, the invoice descriptions and declarations to the contrary notwithstanding.

There may arise instances where invoice descriptions and declarations should be given some evidentiary value, as in the *Sleater* and *Bloomingdale* cases, *supra*, but under the facts and circumstances herein, this is not a case where such evidentiary value should be given to invoice descriptions and declarations as to overcome the presumption of correctness in favor of the collector's classification.

The case of *Oakland Food Products Co.* v. *United States*, 32 C. C. P. A. 28, C. A. D. 281, strongly supports this holding. We quote the following from said decision:

Clearly the decision here is controlled by the decision of this court in the case of *United States* v. *Ocean Brokerage Co.*, *supra*, wherein the issue was whether the statement of the invoice alone overcame the legal presumption attaching to the correctness of the collector's classification.

The invoice description does not fix in a dutiable sense the nature or status of an importation. It is but one of the items considered by the collector when he makes his classification of imported merchandise. It is difficult to understand what value there would be to the presumption of correctness attaching to his action in classifying if such were not the case, and all an importer would have to do would be to introduce his invoice as establishing a *prima facie* case and pass the burden to the Government to establish the correctness of the classification.

For the reasons stated and in line with the authorities referred to, we hold that the plaintiff has failed to establish a *prima facie* case by overcoming the presumption in favor of the collector's classification and offering credible testimony establishing one of its claims. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.