(R.D. 11709)

MAGNESIUM ELEKTRON, INC. v. UNITED STATES

Entry Nos. 847837, etc.

(Decided June 8, 1970)

*Gilbert, Segall & Young; Joseph F. Donohue,* associate counsel; *Donohue & Shaw (Joseph F. Donohue* and *Crawford Shaw* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Steven Sosnov* and *Robert Blanc,* trial attorneys), for the defendant.

LANDIS, Judge: Plaintiff in these reappraisement cases, consolidated for trial, is a United States subsidiary of Magnesium Elektron, Ltd., Manchester, England. It brings these cases contending that customs erred when it valued the imported products on a constructed value basis under section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165, 19 U.S.C., section 1401(a)). Plaintiff here seeks judgment *first:* that United States value or, in the alternative, export value as defined in section 402, *supra,* is the proper basis for valuation of the products, and *second:* that the amount thereof, on either basis, is the same, to wit, the amount set forth in column 4 of the customs invoices (Customs Form 5515[1]), filed with the official papers, expressed in United States dollars as the price "per lb. C.I.F. New York", less certain nondutiable charges.

The imported merchandise consists of seven specialty metal products and three chemical products manufactured by Magnesium Elektron, Ltd., and exported to plaintiff during the period 1965 to 1968.

Consistent with the customs appraisements on a constructed value basis, it is stipulated that none of the imported products are on the so-called Final List (T.D. 54521). That list selectively identifies imported merchandise and products covered by the Tariff Act of 1930 rather than the customs simplification amending law, *supra.*

Defendant, it should be noted, moved the official papers in evidence without objection. (R. 14.)

---

[1] Magnesium Elektron, Ltd., in these cases, filed a separate columner sheet or invoice representing the columns in section IV of Customs Form 5515, which it incorporated into Customs Form 5515 by reference.

# 730

Section 402, as amended, *supra*, provides for the valuation of imported merchandise, in pertinent part, as follows:

(a) BASIS.—Except as otherwise specifically provided for in this Act, the value of imported merchandise for the purposes of this Act shall be—

(1) the export value, or

(2) if the export value cannot be determined satisfactorily, then the United States value, or

(3) if neither the export value nor the United States value can be determined satisfactorily, then the constructed value; * * *

\* \* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

(c) UNITED STATES VALUE.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1); and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

    (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

    (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

    (3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

     \*       \*       \*       \*       \*       \*       \*

(f) DEFINITIONS.—For the purposes of this section—

    (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

        (A) to all purchasers at wholesale, or

        (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

     \*       \*       \*       \*       \*       \*       \*

The trial record, relevent to plaintiff's claims as to the basis of valuation and the amounts thereof, consists of the following: Various

documents prepared by plaintiff's accountant (exhibits 1 through 5); an exhibit listing the invoice names of the imported products and the corresponding but different names by which the imported products were sold in the United States (exhibit 6); plaintiff's sales invoices (collective exhibits 7 through 10), and documents reviewed by one of the witnesses in analyzing the capital structure of plaintiff firm (collective exhibit 11). Four witnesses testified for plaintiff. Defendant, in addition to the official papers, introduced in evidence a letter from plaintiff to the customs examiner of the imported products at New York. (Exhibit A.)

Both sides have briefed what they discern to be the controlling facts of record and the law. However, I find it necessary to dispose of these reappraisement cases on narrow and quite different grounds from those developed and argued in the briefs. I defer, therefore, from extensive discussions of the facts and law covered in the briefs. For the reasons hereinafter set forth, I conclude that the appraised constructed values are erroneous; that plaintiff has failed to prove the correct amount at which the imported products should be valued on the preferred statutory export basis; that plaintiff has failed to prove that there is no export value, and that the imported products must, therefore, remain valued at the appraised constructed amounts.

Customs, I find, appraised the imported products under section 402(d), *supra*, at values which it constructed in amounts equal to the "invoice unit values per lb. in column 6" of the customs invoice Form 5515, net packed or, in some cases, less certain specified costs not here relevant. Section V of the customs invoice requires the seller, shipper, or agent of either, to state in column 6, the price at which the invoice merchandise is now being sold or offered for sale for home consumption including all applicable taxes. On their face, these appraisements, at column 6 invoice prices, do not even presume to reflect the statutory elements for valuation on a constructed value basis. I conclude that the appraised constructed values are perforce erroneous, *Greb Industries, Ltd.* v. *United States*, 64 Cust. Ct. 608, R.D. 11691 (1970).

Plaintiff purports that the record supports a United States value basis and an export value basis, as defined in section 402(c) and (b) respectively, *supra*, for valuing the imported products. Export value basis being preferred over United States value basis for valuation of imported merchandise under section 402 of the Tariff Act of 1930, as amended, *supra*, and such recognized order of preference being contrary to the priority in which plaintiff inversely discusses those two bases of value in its brief, it is appropriate that I first weigh, as the law requires, the record as to the claimed export value basis before

considering the claimed United States valuation basis, *United States* v. *E. R. Squibb & Sons, et al.*, 42 CCPA 23, C.A.D. 564 (1954).

Export value, *supra*, is, *inter alia*, defined as the price, at the time of exportation, at which the merchandise imported is freely sold, or, in the absence of sales, offered for sale (A) to all purchasers at wholesale, or (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise imported. Plaintiff perceives to project itself in the role of a selected purchaser buying the imported products at a price which fairly reflects their market value. Before plaintiff can assume that role, however, it must show that Magnesium Elektron, Ltd., the seller of the imported products, restricted its sales to plaintiff and did not freely sell, or in the absence of sales, freely offer the imported products for sale to all purchasers at wholesale, *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, 127, C.A.D. 846 (1964). Upon weighing the record, I find the evidence more probative of the fact that while, at the time of exportation, the only sales Magnesium Elektron, Ltd., had made were to plaintiff, it did freely offer to sell the imported products to all purchasers at wholesale.

Mr. Frank Sheara, president of Magnesium Elektron, Inc., the *purchaser of the imported products*, in these reappraisement cases, testified that he knew that his firm was the sole importer of these products in the United States and that Magnesium Elektron, Ltd., did not offer the imported products to any other United States importer. (R. 15, 44.) On cross-examination Mr. Sheara backed off from that position somewhat as follows:

Q. Could I [defense counsel] buy directly from Magnesium Elektron, Limited?—A. Do I assume from this——

Q. I am assuming that I am an American buyer.—A. Magnesium Elektron, Limited sells exclusively to Magnesium Elektron, Inc. these products under question.

Q. If a United States purchaser wished to buy this from Magnesium Elektron, Limited, would Magnesium Elektron, Limited sell it to this purchaser?—A. I think this is a difficult question to answer, in this respect: they have not sold any of these products to any other U.S.A. importer. They sell to Magnesium Elektron, Inc.; we, in turn, offer the material to anyone who wishes to purchase it in the United States. [R. 68.]

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. Could one of the United States purchasers go to the United Kingdom and buy this merchandise at the United Kingdom price, and bring it into the United States?—A. I couldn't tell you about that.

Mr. DONOHUE: I object.

Q. To your knowledge, ——

MR. DONOHUE: I object on the ground that the question is purely hypothetical and does not purport to relate to any transaction in the United States, that actually happened here.

JUDGE LANDIS: I think some evidence has already gone in on this point. I think it is cumulative, but there have not been any objections up to this point.

I will overrule the objection.

THE WITNESS: Will you ask it again?

Q. The question was basically this: Can an American user go to the United Kingdom and purchase from Magnesium Elektron, at United Kingdom prices, chemicals which you couldn't or would not sell him?—A. There would be nothing to stop him from going to them to buy the products—but I have mentioned to you previously that my company is the sole importer of these products in the United States market. [R. 91–92.]

No one can gainsay that Magnesium Elektron, Ltd., should know better than anyone else how it freely sold or offered to sell the imported products at the time of exportation. Despite its close relationship to plaintiff, no one from Magnesium Elektron, Ltd., testified in this case. Short of this, therefore, the best evidence I find of how Magnesium Elektron, Ltd., sold or offered the imported products for sale for export to the United States is in the answers it gave to questions put to it in customs invoice Form 5515, under the signature of its agent, concurrent with the date of exportation. Section V of Customs Form 5515 embraces a series of questions to be filled in for every shipment. Two of the questions, in my opinion, tell the story sufficiently to foreclose plaintiff's claim that it is a selected purchaser, as follows:

4. * * *
&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(B) (1) Have you stated in section IV, column 7, the price at which you are now selling the goods or offering them for sale for export to the United States and whether this price is f.o.b., c.i.f., c.&f., or whatever the fact may be? [X] Yes [ ] No

(B) (2) Is this price freely offered to anyone who wishes to buy the goods for export to the United States? [X] Yes [ ] No

Column 7 of the customs invoice lists the unit prices in English currency "F.O.B. U.K. PORT" for export to the United States. When not discredited or impeached, and the above statements have not been, invoices in evidence without objection are judicially probative of the facts stated therein. *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T.D. 38400 (1920); *W. T. Grant Company* v. *United States*, 38 CCPA 57, C.A.D. 440 (1950); *Dominick Butti* v.

*United States*, 49 CCPA 1, C.A.D. 778 (1961); *Nichols & Company, Inc.* v. *United States*, 60 Cust. Ct. 917, R.D. 11555 (1968).

The above answers which Magnesium Elektron, Ltd., gave substantially rebut, in my opinion, plaintiff's attempt by testimony to cast itself in the role of a selected purchaser. Since the imported products, as the record indicates, were at the very least freely offered for sale to all purchasers at wholesale for export to the United States, the freely offered price to all purchasers at wholesale, and not the price to plaintiff (as a selected purchaser), is the viable export value to be considered in the valuation of these imported products under the section 402(b) statutory definition, *Aceto Chemical Co., Inc.* v. *United States, supra.* While the unit prices in column 7 of the customs invoices are represented to be the prices at which the imported products are freely offered for sale to all purchasers at wholesale for export to the United States, I find no proof that those unit prices comport with the other material elements of statutory export value (proof of usual wholesale quantities, etc.), as defined in section 402(b), *supra.* Cf. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952). "The price stated in * * * invoice[s] may or may not be in conformity with that valuation contemplated by the statute. It is a matter of proof and not of suspicion." *Kobe Import Co.* v. *United States*, 42 CCPA 194, 199 C.A.D. 593 (1955). Plaintiff's failure to claim the column 7 unit prices, and the customs rejection of the column 7 prices, on export value basis, further underscores the lack of consensus that the column 7 unit prices represent statutory export value.

Plaintiff having claimed and failed to prove the correct amount at which the imported products should be valued on export value basis, it is understandable that it has also not proved that the imported products have no export value, as defined in section 402(b), *supra.* Lacking the above proofs, plaintiff's claim for United States value likewise must fall. United States value is a proper basis for appraisement only when it has been shown that there is no statutory export value for the imported products. *United States* v. *Joseph Tanous*, 53 CCPA 129, C.A.D. 889 (1966); *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 814 (1964); *Nicholas Gal (Globe Shipping Co., Inc.)* v. *United States*, 38 Cust. Ct. 728, A.R.D. 72 (1957). On this record, valuation on United States value basis, without negating an export value basis, would be as erroneous as the appraised valuation on constructed value basis. When that is the choice, the imported merchandise must remain valued at the appraised amounts. *Kobe Import Co.* v. *United States, supra.*

I find as facts:

1. That the merchandise of these appeals for reappraisement consists of seven specialty metal and three chemical products manufactured by Magnesium Elektron, Ltd., Manchester, England, and exported to Magnesium Elektron, Inc., New York, N.Y., in the years 1965 through 1968.

2. That the imported products are not specified in the final list published pursuant to the Customs Simplification Act of 1956.

3. That customs officials appraised the imported products on constructed value basis under section 402(d) of the Tariff Act of 1930, as amended, at the invoice unit values in column 6 of the customs invoices filed with the official entry papers.

4. That, at the respective times of exportation, Magnesium Elektron, Ltd., freely sold the imported products to Magnesium Elektron, Inc., and freely offered the imported products for sale to all purchasers at wholesale for export to the United States.

5. That there is no proof that the prices Magnesium Elektron, Inc., paid for the imported products are the prices at which the imported products were freely sold or freely offered for sale to all purchasers at wholesale for export to the United States under the conditions required by section 402(b) of the Tariff Act of 1930, as amended.

6. That there is no proof that the prices represented in the customs invoices as the prices at which the imported products were freely offered for sale to all purchasers at wholesale for export to the United States comport with the other material elements of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended.

7. That there is no proof that the imported products were not freely sold or, in the absence of sales, offered for sale to all purchasers at wholesale for export to the United States at a price, as defined in section 402(b) of the Tariff Act of 1930, as amended.

I conclude as a matter of law:

1. That the appraised values constructed for the imported products are erroneous for failure to comply with section 402(d) of the Tariff Act of 1930, as amended.

2. That plaintiff has failed to prove the correct amount at which the imported products should be valued on the claimed export value basis under section 402(b), as amended.

3. That plaintiff has failed to negate the existence of an export value for the imported products as defined in section 402(b), as amended, and, therefore, the imported products cannot be valued on plaintiff's claimed United States value basis under section 402(c), as amended.

4. That in the absence of proof showing the correct basis of valua-

tion and the value of the imported products on that basis, the imported products must remain valued at the appraised amounts.

Judgment will be entered accordingly.